**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER S. DORSEY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:25-cv-5522** |
| | § | |
| **AVIS BUDGET GROUP d/b/a** | § | |
| **AB CAR RENTAL SERVICES, INC.** | § | |
| | § | |
| **Defendant.** | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff Christopher Dorsey ("Plaintiff" or "Dorsey") by and through undersigned counsel, files this Original Complaint against Defendant Avis Budget Group, Inc. d/b/a AB Car Rental Services, Inc. ("Defendant" or "Avis"), and in support of his cause of action would respectfully show the Court as follows:

### I.    PARTIES

1.    Plaintiff Christopher S. Dorsey is an individual who resides in Houston, Texas and at all relevant times was employed by Defendant in Houston, Texas.

2.    Defendant Avis Budget Group d/b/a AB Car Rental Services, Inc. is a foreign for-profit corporation conducting business in the State of Texas at 7714 Airport Blvd., Houston, Texas 77061. Defendant AB Car Rental Service, Inc. can be served through its Registered Agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 701 Brazos, Suite 1050, Austin, TX  78701.

## II.    JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) as this action arises under federal law, specifically the ADA, Title VII, and FLSA, and under 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000 and the dispute is between citizens of different states.

4.      Venue properly lies in this Court because a substantial portion of the events or omissions giving rise to these claims occurred in this District and Defendant maintains operations here.

5.      Plaintiff timely filed a Charge of Discrimination with the EEOC and received a Right-to-Sue letter, filing this complaint within 90 days.

## III.    FACTUAL BACKGROUND

6.      Plaintiff was hired by Defendant around October 2024 as a Service Agent at the William P. Hobby Airport location in Houston, Texas.  After successfully completing his probationary period on or about February 2025, he became a permanent employee.

7.      Although classified as part-time, Plaintiff regularly worked 79–80 hours every two weeks—effectively full-time—performing full-time duties while being denied corresponding pay and benefits.  Supervisors instructed him not to report all hours worked, thereby avoiding paying overtime and concealing labor law violations from upper management.

8.      Plaintiff consistently performed his duties competently, received positive feedback, and had no record of discipline or poor performance.

9.      During March and April 2025, Plaintiff became increasingly concerned about unsafe workplace conditions, including reckless driving in vehicle return and cleaning areas.  He

made multiple good-faith reports of safety violations and misconduct by coworkers and supervisors.

10.     Instead of addressing these issues, Plaintiff's immediate supervisor Peter began keeping track of his reports, openly disclosing them to other employees, and fostering hostility toward him.

11.     Shortly thereafter, Plaintiff rented a vehicle through an employee benefit program and returned it properly fueled.  When a manager failed to refuel her own rental vehicle, she wrongfully deducted fuel costs from Plaintiff's paycheck.  Plaintiff reported the error, and after several weeks, management forced the manager to reimburse him.  This incident further aggravated hostility from supervisors and coworkers.

12.     On or about April 10, 2025, Plaintiff was intentionally struck by coworker Cloe ("C") Ellis, who reversed a vehicle into him while other employees stood by, anticipating and recording the incident.  Ellis smiled at Plaintiff through the window before driving away.  Plaintiff sustained injuries to his left arm, hip, back, and neck, including a rotator cuff tear and lumbar strain.

13.     Plaintiff immediately reported the assault.  Coworker Debra assisted him, and manager Peter prepared an incident report but laughed about the incident and discouraged Plaintiff from pursuing the matter, warning that "if you make it more than what it is, you'll lose your job."

14.     Plaintiff was evaluated at the company clinic and referred for therapy, but the provider minimized his injuries.  When Plaintiff sought a second opinion under workers' compensation, Defendant refused to cooperate, denied benefits, and failed to provide accommodations.

PLAINTIFF'S ORIGINAL COMPLAINT                                                                    Page 3

15. Plaintiff was later diagnosed with a left rotator-cuff tear and hip contusion, with ongoing pain and limitations.

16. Upon attempting to return to work with medical restrictions, Plaintiff was initially provided light-duty work, but Manager Peter told Plaintiff, "If you can't do your job, go home." Plaintiff was removed from the schedule, effectively terminated in retaliation for reporting his injury and workplace safety concerns.

17. Plaintiff has not received any termination notice but has been effectively discharged as Defendant stopped paying Plaintiff and denied his workers' compensation claim.

18. The workplace accident and Defendant's retaliatory conduct have left Plaintiff with permanent impairments and an inability to continue his previous CDL truck driving career, causing substantial financial and emotional hardship.

19. Defendant's conduct left Plaintiff without income, workers' compensation benefits, or medical support. He continues to suffer physical pain, permanent impairment, loss of earning capacity, and emotional distress.

### IV.    CAUSES OF ACTION

#### COUNT ONE:   DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE ( ADA)

20. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

21. After sustaining a workplace injury on April 10, 2025, Plaintiff suffered limitations to his left arm, hip, and back that substantially impaired his ability to lift, bend, and stand for extended periods.

22. Plaintiff promptly informed management of his medical restrictions and provided documentation from his treating physician.

PLAINTIFF'S ORIGINAL COMPLAINT                                                   Page 4

23. Defendant was aware of Plaintiff's physical impairments and temporary work restrictions but failed to engage in an interactive process to identify a reasonable accommodation.

24. Defendant initially provided light-duty work but rescinded it within days, instructing Plaintiff to "go home" if he could not resume full-duty tasks.

25. Defendant thereafter ceased paying wages, removed Plaintiff from the schedule, and refused to allow him to return despite his requests for continued accommodation.

26. Defendant's conduct constitutes discrimination and failure to accommodate in violation of the ADA, causing Plaintiff lost wages, emotional distress, and physical aggravation of his injury.

### COUNT TWO:   RETALIATION

27. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

28. Plaintiff engaged in protected activity when he (a) reported repeated safety violations and reckless driving to management; (b) filed an incident report and workers' compensation claim after being struck by a coworker; and (c) later filed an EEOC charge alleging discrimination and retaliation.

29. Immediately after these protected activities, supervisors discouraged him from making the situation "more than it was," warned he could "lose his job," and subsequently removed him from the schedule and stopped his pay.

30. Defendant's stated reason—that Plaintiff could not perform his duties—was a pretext to conceal retaliation for his safety complaints and disability-related requests.

31.     Defendant's retaliatory actions caused Plaintiff substantial wage loss and emotional distress and violated both the ADA's and Title VII's anti-retaliation provisions.

### COUNT THREE:   FAILURE TO PAY OVERTIME WAGES (FLSA)

32.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

33.     Although hired as a part-time Service Agent, Plaintiff routinely worked approximately 79–80 hours every two weeks, regularly exceeding forty hours in a workweek.

34.     Supervisors directed Plaintiff to under-report his hours so that payroll would not reflect overtime, thereby avoiding lawful overtime payments.

35.     Defendant willfully failed to compensate Plaintiff at one-and-one-half times his regular rate for hours worked over forty in violation of the FLSA.

36.     Plaintiff seeks recovery of unpaid overtime wages, liquidated damages, attorneys' fees, and costs as provided under 29 U.S.C. § 216(b).

### COUNT FOUR:   WORKERS' COMPENSATION RETALIATION

37.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

38.     After being injured on April 10, 2025, Plaintiff filed a workers' compensation claim and sought ongoing medical treatment.

39.     Within weeks, Defendant terminated his light-duty assignment, instructed him to stay home, and ceased paying him altogether.

40.     These actions were taken because Plaintiff sought workers' compensation benefits, constituting retaliation prohibited by Texas Labor Code § 451.001.

41.    As a result, Plaintiff suffered lost wages, loss of earning capacity, and mental anguish for which he seeks compensatory and exemplary damages.

## V.    DAMAGES

42.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered lost wages, emotional distress, physical pain, and medical expenses.

43.    Plaintiff seeks actual, compensatory, punitive, and liquidated damages, as well as attorneys' fees and costs.

## VI.    REMEDIES

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and grant relief as follows:

a.    Back Pay, Front Pay, and Benefits: An award for the wages, employment benefits, and other compensation Plaintiff would have received but for Defendant's unlawful conduct, plus interest;

b.    Compensatory Damages: For emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, in an amount to be determined by the jury;

c.    Unpaid overtime wages and liquidated damages under the FLSA;

d.    Punitive and exemplary damages as authorized by law in a precise amount to be determined by the jury;

e.    Attorneys' Fees and Costs: Reasonable attorneys' fees, expenses, and costs, as provided by statute;

f.    Pre- and Post-Judgment Interest; and

g.    Any other and further relief the Court deems just and proper.

## VII.    JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues of facts and damages raised in this case.

Respectfully Submitted,
**CARTER LAW GROUP, PC**

*/s/  Amy Carter*
Amy Carter
Texas Bar No. 24004580
acarter@clgtrial.com
Taylor Jenkins
Texas Bar No.  24135171
tjenkins@clgtrial.com
351 W. Jefferson Blvd.
Suite 503, LB 11
Dallas, TX 75231
Telephone: (214) 390-4173

**ATTORNEYS FOR PLAINTIFF**